**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER GRANTING, IN PART,** |
| Plaintiff, | ) | **GOVERNMENT'S MOTION IN** |
| | ) | **LIMINE** |
| vs. | ) | |
| | ) | Case No. 4:06-cr-009 |
| Waylon Christopher Gladue, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Government's Motion in Limine filed on September 13, 2006. The Defendant filed a response on September 25, 2006. For the reasons set forth below, the motion is granted in part.

## I.  BACKGROUND

This case stems out of a one-vehicle accident which resulted in the death of Elaine Walter. According to the Government, shortly after midnight on July 3, 2005, Elaine Walter was sitting in the northbound lane of BIA Highway #25 near Dunseith, North Dakota. Tribal Housing Officer Steve Myers was notified of the fact that a woman (Walter) was on the road and went to that location. Upon arrival, Myers attempted to move Walter, but she complained of pain in her hip or leg and said that she could not move. Myers then called for an ambulance. Myers had stopped his pickup facing south, and the vehicle was straddling the center line. Walter was located on the highway near the driver's side of Myers' pickup. Myers had his headlights on, activated a red revolving light on his dashboard, and turned on his flashers. Myers was apparently able to direct other cars around the scene.

The defendant, Waylon Glaude, was northbound as he approached the scene. Myers tried to get the Defendant's attention by waving a flashlight when it appeared that the vehicle was not slowing down. Myers had to jump out of the way and the Defendant's vehicle struck Elaine Walter. Blood alcohol analysis showed the Defendant's BAC to be .27, which is three-and-a-half times the legal limit in North Dakota.

The Government is requesting that a portion of the testimony from Lewis L. Dirks, an accident reconstructionist retained by the Defendant, be excluded. The Government does not object to testimony by Dirks as to the speed of the Defendant's vehicle at the time of the crash. However, the Government asserts that Dirks' testimony regarding what the Defendant was able to see at the time of the accident, the effect of oncoming headlights, and placement of emergency response vehicles. The Government points to several excerpts from Dirks' report which it argues contain inadmissible opinion evidence. Dirks has opined as to what the Defendant would have seen as he approached the accident site.

> As Waylon Gladue approached the Myers vehicle, he would only have seen the headlights of the Myers vehicle. These headlights would have obscured Elaine Walter from his view. In addition, if Steve Myers was standing in front of his vehicle and waving his flashlight, Waylon Gladue would have no way of knowing what the light was if in fact he saw the single light. Because the small emergency light was located on the dash and just above the level of the headlights, the light may not have been visible to an approaching driver. . . .

See Docket No. 29, p.3. Dirks' report also discusses the effect of on coming headlights.

> It has been shown and reported that driver of approaching vehicles can't see objects and human beings that are behind or in front of another oncoming vehicle's headlights. In this case, Elaine Walters was hidden from the view of Waylon Gladue by the headlights of the Myers vehicle. . . .

See Docket No. 29, p. 4. Finally, the Government objects to Dirks' opinion as to the placement of emergency vehicles.

2

> Waylon Gladue ran over Elaine Walters because Steve Myers stopped his vehicle in such a position that he, Steve Myers, kept Waylon from seeing the danger. . . .
>
> . . .
>
> However, by placing his vehicle as he did, he created an environment, which kept northbound drivers from seeing the danger. In fact, the placement of his vehicle would cause a northbound driver to pay more attention to Steve Myers (sic) vehicle because of its location on the road.

See Docket No. 29, p. 4.

## II.   LEGAL DISCUSSION

Rule 702 of the Federal Rules of Evidence sets forth the standard for expert testimony and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 requires the trial judge to act as a "gatekeeper" and admit expert testimony only if it is relevant and reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). In Daubert, the Supreme Court charged trial courts with the responsibility of screening such testimony for reliability by assessing the expert's reasoning and methodology. Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 296 (8thh Cir. 1996). The trial court is granted broad discretion in its determination of reliability. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999). However, the gatekeeper role should not invade the province of the jury whose job it is to decide issues of credibility and to determine the weight to be accorded such evidence. See Arkwright Mut. Ins. Co. v. Gwinner Oil Co., 125 F.3d 1176, 1183 (8th Cir. 1997). Expert testimony

3

should be admitted if it is based on sufficient facts, it "is the product of reliable principles and methods," and "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; see General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

The Eighth Circuit has set forth three prerequisites that must be met in order for expert testimony to be admitted under Rule 702.

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires . . . ."

Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001) (quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.02[3] (2001)).

In the well-known case of Daubert v. Merrell Dow Pharmaceuticals Inc, 509 U.S. 579 (1993), the United States Supreme Court held that the "general acceptance" standard articulated in Frye was "not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of Evidence – especially Rule 702 – do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597. The Supreme Court has also held that the principles set forth in Daubert apply to all expert testimony. Kuhmo Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999) ("We conclude that Daubert's general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."); accord Jaurequi v. Cater Manufacturing Co. Inc., 173 F.3d 1076, 1082 (8th Cir. 1999).

A.      **THE DEFENDANT'S ABILITY TO SEE**

The Government contends that Dirks' opinion as to what the Defendant could see at the time of the accident is speculation or is based on his own subjective belief.

The Court finds that Dirks' opinion as to what the Defendant could see at the time of the accident on July 3, 2005, is speculative at best and inadmissible opinion evidence. Any question as to what the Defendant could see while driving at night with a blood alcohol concentration of .27 is a question of fact for the jury to determine. Expert testimony is not necessary to resolve this factual issue. The jury can consider all of the evidence presented at trial to make that factual determination. An expert witness is neither needed nor qualified to express an opinion as to what an extremely intoxicated individual driving at night could have seen at any given moment. Expert witness testimony is admissible only if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The Court finds that Dirks' opinions as to what the Defendant could see at the time of the accident are speculative and inadmissible pursuant to Rule 702 of the Federal Rules of Evidence.

### B.  EFFECT OF ONCOMING HEADLIGHTS

The Government also contends that the Defendant has not shown that Dirks is qualified to provide an opinion as to the effect of oncoming headlights.

Dirks' report make a vague reference to reports that "drivers of approaching vehicles can't see objects and human beings that are behind or in front of another oncoming vehicle's headlights." The Court finds that such an opinion is overbroad and lacks reliability.  The ordinary lay person serving on the jury has likely experienced a wide-range of nighttime driving conditions, which includes driving a vehicle and approaching an oncoming vehicle's headlights whether that vehicle is moving or parked. The ordinary layperson has likely had experience in attempting to see objects or persons behind, next to, or in front of another oncoming vehicle's headlights.  To suggest that drivers of approaching vehicles cannot see objects or person behind or in front of headlights, is overbroad at best because one's ability to see at night is influenced by a multitude of factors.  A more accurate and reliable opinion would be that such drivers <u>may have difficulty</u> seeing objects and persons rather than the unsupported and unreliable opinion that drivers simply <u>can't see</u> objects or persons behind or in front of oncoming headlights.  In addition, the Defendant has not established that Dirks is qualified to offer an opinion on the effects of oncoming headlights.  The Court will defer ruling on this portion of the Government's motion.  If the Defendant provides adequate foundation for the presentation of such an opinion, and establishes that Dirks is qualified by knowledge, skill, experience, training or education to testify as to the effect of oncoming headlights, the Court will  revisit the issue.

### C. PLACEMENT OF EMERGENCY VEHICLES

Finally, the Government contends that Dirks' opinion that the placement of Myers' vehicle was the cause of the accident and that the placement of Myers' vehicle was improper should also be excluded.

The Court finds that Dirks' proposed testimony as to the placement of Myers' vehicle is admissible expert testimony, but only to the extent that it does not invade the province of the jury to determine the cause of the accident. In other words, Dirks may testify in general terms that the placement of Myers' vehicle was improper; that such placement may have prevented northbound drivers from seeing the danger; and that such vehicle placement may have caused a northbound driver to pay more attention to Myers' vehicle because of its location. However, Dirks may not testify that the placement of Myers' vehicle was the reason that the Defendant struck Elaine Walter on the roadway. The jury may ultimately reach that conclusion on its own after hearing all of the evidence presented at trial. However, the reason(s) the Defendant's vehicle struck Elaine Walter are clearly fact questions that the jury is best able to resolve. The ordinary layperson can readily evaluate and assess the facts and circumstances which led up to this unfortunate accident. There is no need for expert testimony on this ultimate issue of fact.

### III. CONCLUSION

The Court **GRANTS**, in part, the Government's Motion in Limine (Docket No. 28). Defense expert Lewis Dirks is prohibited from expressing an opinion as to what the Defendant did see or did not see at the time of the accident on July 3, 2005, or the reason(s) the Defendant's vehicle struck Elaine Walter. Any opinion as to what an extremely intoxicated driver may have seen while driving

7

at night is speculative at best and lack reliability.  The Court will allow Dirks to opine, in general terms, as to how the placement of the Myers' vehicle may have effected the view of oncoming traffic.  Finally, the Court will reserve ruling on whether Dirks' testimony concerning the effects of oncoming headlights is admissible.

**IT IS SO ORDERED**.

Dated this 25th day of September, 2006.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court